

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00255-CR

RICKEY LYNN PARKER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Rickey Lynn Parker pled guilty to unauthorized use of a motor vehicle (UUMV) and elected for the jury to assess his punishment. He now appeals his conviction, contending in a single point that the trial court abused its discretion during the punishment phase by limiting Appellant's cross-examination of a witness for the State. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Factual and Procedural Background**

Steve Miller did contract work for Phillip Morris demolishing buildings as a part of the Trinity River Project. Appellant was living in a halfway house after his release from prison when he met Miller and asked him for a job. Miller hired Appellant as a day laborer on the job he was doing for Morris.

Miller and Morris felt that Appellant was a hard worker and a "good guy," and Morris let Appellant move into his shop on his Parker County farm and live there rent free beginning the first week in October 2010. He also let Appellant drive his 2003 Chevrolet pickup back and forth from the shop to work. Although Morris and Appellant had discussed Appellant buying the truck from Morris, they never struck a deal.

Danny Blount also lived on Morris' property at the time and performed security duties. One morning in November, Blount saw Appellant drive away in Morris's truck. He knew that Appellant had a ten o'clock curfew, so when Appellant did not return with the truck by that time that evening he believed that Appellant was not coming back. Appellant did not report to work the next day, which caused Miller and Morris concern for his safety. Both tried to call Appellant on the cell phone that Morris had purchased for him but were unable to reach him. After several days, Morris called the Parker County Sheriff to report his truck missing.

About two weeks after he took the truck, Appellant called Miller from Dallas and told him he "had messed up and he—wanted to find out if he [could] come back to work." Miller suggested he check with Morris. Appellant called Morris, asked him

2

to come to Dallas and pick him up, and Morris went there as directed. On the way, he called the Dallas Police. They responded and ultimately arrested Appellant. The truck was damaged but recovered. Appellant pled guilty to UUMV, pled true to two enhancement paragraphs that had alleged prior state jail felony convictions, and elected to have the jury decide his punishment.

During the punishment phase of Appellant's trial, Miller testified as follows:

Q. [by the State] Okay. Now in fairness, did the actions of the defendant cause you to lose work with Mr. Morris?

A. Yes, it did.

Q. Okay. Was that the sole reason why you lost work with Mr. Morris?

A. No, not the sole reason.

Q. Okay. And are you here testifying today because you're mad at the defendant because you lost work with Mr. Morris?

A. No.[2]

Later, in a hearing outside the presence of the jury, Appellant argued that he should be allowed to impeach Miller with the fact that Miller was a registered sex offender and argue that was the reason Miller lost business with Morris—not because Miller had hired Appellant and Appellant had committed a crime against Morris. The State objected that the offense that had required Miller to register as a sex offender had resulted in deferred adjudication community supervision that had

---

[2]Inexplicably, citing this same testimony—which we have quoted verbatim—Appellant claims that "Miller stated that the sole reason that he had lost doing further business with Morris was over this incident with the Appellant."

been discharged and thus was inadmissible under the rules of evidence because it had not resulted in a conviction.[3] The State also objected that the proposed line of cross-examination was not relevant. After allowing Appellant to ask his questions outside the jury's presence, the trial court instructed him not to do so in front of the jury.

The trial continued, and after both sides had rested, the jury assessed punishment at ten years' confinement with a $10,000 fine,[4] and the trial court sentenced Appellant accordingly.

In his sole point on appeal, Appellant claims the trial court abused its discretion by not permitting Appellant to confront and cross-examine Miller before the jury regarding his status as a registered sex offender. We disagree.

---

[3]Rule 609 is entitled **Impeachment by Evidence of Conviction of Crime**. Rule 609(b) provides that "evidence of a *conviction*" is too remote for impeachment purposes if "more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that *conviction*, whichever is the later date, unless the court determines . . . that the probative value of the *conviction* supported by specific facts and circumstances substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b) (emphasis added). Rule 609(c)(2) provides that the prior *conviction* is not admissible if the probation has been satisfactorily completed and that person has not been convicted of a subsequent crime. *Id*. 609(c)(2) (emphasis added).

[4]Texas Penal Code section 12.42(a)(1), which was applicable at the time this case was tried, provided, "If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two state jail felonies, on conviction the defendant shall be punished for a third degree felony." Tex. Penal Code Ann. § 12.42(2)(1) (West 2011).

The applicable range of punishment was two to ten years in the penitentiary with a fine not to exceed $10,000. *Id*. § 12.34.

**Analysis**

*Standard of Review*

We review a trial court's decision to limit cross-examination for an abuse of discretion. *Walker v. State*, 300 S.W.3d 836, 843 (Tex. App.—Fort Worth 2009, pet. ref'd); *Pope v. State*, 161 S.W.3d 114, 123 (Tex. App.—Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1350 (2007). In applying this standard, we look to whether the trial court's ruling goes beyond the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). As long as the trial court's decision is correct under any theory of law applicable to the case, it must be upheld. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

*Right to Confront and Cross-Examine*

The United State Supreme Court has held that the right to confrontation is "[o]ne of the fundamental guarantees of life and liberty. . . ." *Kirby v. United States*, 174 U.S. 47, 55–56, 19 S. Ct. 574, 577 (1899). As the Supreme Court held in *Davis v. Alaska*, "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." 415 U.S. 308, 315–16, 94 S. Ct. 1105, 1110 (1974).

Appellant claims that he should have been allowed to cross-examine Miller about his status as a registered sex offender because Miller's testimony on direct examination left a false impression with the jury, that is, that the sole reason he lost

5

business with Morris was because he hired Appellant when, in fact, it could have been because he was a registered sex offender. Appellant contends that the trial court's limiting his cross-examination "boosted" Miller's credibility. He urges that he should have been allowed to highlight "testimonial defects" and impeach Miller based on a general lack of credibility.

***Miller did not leave a false impression.***

The prosecutor asked Miller how his hiring Appellant affected his future job prospects with Morris:

> Q.     Okay. Was that the sole reason why you lost work with Mr. Morris?
>
> A.     No, not the sole reason.

Appellant misconstrues Miller's answer in the affirmative and argues that Miller left the "false impression" that the sole reason he did not get more work from Morris was because he had hired Appellant. But Miller did not leave a false impression.

After Miller testified as set out above, and during his cross-examination, Appellant requested a hearing outside the presence of the jury, during which he stated that he desired to question Miller about his status as a registered sex offender as "[a] matter of credibility, Judge, to put his credibility in the proper context before the jury." The State objected under Texas Rules of Evidence 609 and relevance. Defense counsel responded that he should be allowed to cross-examine on the issue as "impeachment because of the way in which he's presented himself

6

and his business and his lack of business now with Mr. Morris." As he pursued his request, the record reflects the following:

> MR. ALLEY [for Appellant]: . . . I would like to ask him one question of did he lose business with Mr. Morris as a result of being convicted or - - excuse me, not convicted but placed on deferred and then having to register as a sex offender. And if it didn't, that's fine, I understand. But I think it's important to respond to the state's relevance point.

> THE COURT: Well, okay. If I let you ask that question, then you would - -

> MR. ALLEY: I don't mean to ask it in front of the jury, I meant now.

> THE COURT: Okay. And the question and the answer would not be published to the jury unless the Court permits that.

> MR. ALLEY: Right.

> THE COURT: Would that be the deal between us?

> MR. ALLEY: That's the arrangement.

> THE COURT: Okay. I'll let you ask him the question.

> Q. (BY MR. ALLEY) You said you lost some business with Mr. Morris. Did you lose business with Mr. Morris in part because you have a deferred that you completed and you're a registered sex offender?

> A [Miller]. No.

As a general rule, a party is not entitled to impeach a witness on a collateral matter. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990); *see Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (holding that murder victim's status as a sex offender was a collateral issue that was not relevant to jury's assessment of appropriate sentence). An issue is collateral, if beyond its

7

impeachment value, a party would not "be entitled to prove it as part of his case tending to establish his plea." *Hayden*, 296 S.W.3d at 554; *Ramirez*, 802 S.W.2d at 675; *Bates v. State*, 587 S.W.2d 121, 142 (Tex. Crim. App. 1979) (op. on reh'g); *see also Shipman v. State*, 604 S.W.2d 182, 183 (Tex. Crim. App. 1980).

An exception to the general rule exists when a witness leaves a false impression concerning a matter relating to his or her credibility that allows the opposing party to correct that false impression. *Hayden*, 296 S.W.3d at 554; *Ramirez*, 802 S.W.2d at 676.

Contrary to Appellant's position, Miller did not testify before the jury that the sole reason he did not get more work from Morris was because he had hired Appellant. Further, at the hearing outside the jury's presence Miller confirmed that his hiring Appellant was not the sole reason he did not get more work from Morris, and he established that his status as a registered sex offender had nothing to do with the loss of job opportunities.

Appellant's contention that Miller's testimony created a false impression, and thereby warranted invoking the exception, is unsupported by the testimony.

*General Credibility*

Appellant argued at trial that he should be allowed to cross-examine Miller about his prior deferred adjudication probation that had been imposed in 1998 and that required Miller to register as a sex offender for life. Appellant did not claim at trial and does not claim on appeal that he wished to so cross-examine Miller to reveal any possible biases, interests or motives but he argued that the cross-

8

examination should have been allowed to "put his credibility in the proper context before the jury."

An accused does not have an absolute constitutional right to impeach the general credibility of a witness in any fashion he chooses. *See Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009). While the Confrontation Clause guarantees an opportunity for effective cross-examination, trial courts have the discretion to limit cross-examination as inappropriate for a number of reasons including the prevention of harassment, prejudice and marginally relevant interrogation. *Carpenter v. State,* 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986)); *Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.).

Rule 609(a) of the Texas Rules of Evidence allows for impeachment of a witness with evidence of a conviction for a prior felony or crime of moral turpitude if the trial court determines that the proponent of the evidence meets the burden of demonstrating that the probative value of the evidence outweighs the prejudicial effect. Tex. R. Evid. 609(a); *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992).[5] However, if the date of conviction or the release of the witness from confinement is more than ten years from the date of impeachment, the evidence of the conviction is permissible only if the probative value of the conviction supported

---

[5]Our rules of evidence prohibit the introduction of evidence concerning specific instances of conduct for impeachment of credibility, other than conviction of a crime under Rule 609. Tex. R. Evid. 608(b).

by the facts and circumstances "substantially outweighs" its prejudicial effect. Tex. R. Evid. 609(b); *Morris v. State*, 67 S.W.3d 257, 263 (Tex. App.––Houston [1st Dist.] 2001, pet. ref'd).[6] Deferred adjudication is not a conviction and cannot be used to impeach a witness under 609(a) unless the proponent makes a showing that the witness testified as a result of bias, motive or ill will emanating from his status of deferred adjudication. *Jones v. State*, 843 S.W.2d 487, 496 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 1035 (1993); *Callins v. State*, 780 S.W.2d 176, 196 (Tex. Crim. App. 1986) (op. on reh'g), *cert. denied*, 497 U.S. 1011 (1990).

Appellant did not claim at trial and does not now claim that Miller was biased or that he had ill feelings or animosity toward Appellant. At trial he argued that the collateral consequence of Miller's completed deferred adjudication probation was sex offender registration for life and that he should be allowed to ask Miller about that to put his credibility in the proper context before the jury. On appeal, however, his argument has transformed—unsupported by any authority––to a claim that "the disabilities caused by the underlying conviction for which registration did not expire, neither did the conviction and thus were a proper area of inquiry prohibited by the court . . .". But even if we take from this that Appellant is claiming that Miller's status as one who must register as a sex offender was a proper inquiry on cross-examination, Appellant has provided no authority to support such a contention.

---

[6]Miller's testimony was presented on June 23, 2011. He was placed on deferred adjudication more than ten years before, in 1998. Even if he had been convicted then, instead of receiving deferred adjudication, the conviction would have been too remote for impeachment. *See* Tex. R. Evid. 609(b).

Moreover, Appellant did not argue at trial and does not now argue that Miller's status as a sex offender was somehow a proper topic for impeachment outside the context of Rule 609. Absent any support for this contention, we will not address it further.

The evidence presented at the hearing on this issue showed that Miller was never "convicted" of any offense. Denying Appellant the right to impeach Miller with a remote and successfully completed deferred adjudication probation did not deny Appellant his constitutional right of confrontation. *See Jones*, 843 S.W.2d at 496; *Callins*, 780 S.W.2d at 196. No abuse of discretion having been shown, we overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 20, 2012